# Illinois Official Reports

## Appellate Court

---

### *People v. Zamora*, 2020 IL App (1st) 172011

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JUAN ZAMORA, Defendant-Appellant. |
| District & No. | First District, Second Division<br>No. 1-17-2011 |
| Filed<br>Rehearing denied | September 29, 2020<br>October 22, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2015-CR-9731; the Hon. Ursula Walowski, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Alexander G. Muntges, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, David H. Iskowich, and David G. Myers, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE LAVIN delivered the judgment of the court, with opinion.<br>Justices Pucinski and Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a bench trial, defendant Juan Zamora was found guilty of failing to provide humane care and treatment for, and abusing, his 10 dogs, in violation of the Humane Care for Animals Act (Act). 510 ILCS 70/3(a)(4), 3.01 (West 2014). On appeal, defendant asserts the evidence was insufficient to sustain his convictions because the evidence generally showed he treated his dogs well and they had not sustained physical or psychological injuries. He also contends that section 3(a)(4) of the Act, which criminalizes the failure to provide "humane care and treatment," is unconstitutionally vague. For the following reasons, we affirm the trial court's judgment.

¶ 2                                  I. Background

¶ 3    The State charged defendant with three counts of violating the Act and ultimately proceeded to trial on two counts. Specifically, the State alleged that defendant "knowingly failed to provide humane care and treatment for each of the ten (10) pit bull mix dogs *** in his care or control" and had previously been convicted of the same offense. *Id.* § 3(a)(4). Additionally, the State alleged that defendant committed animal cruelty in that he "knowingly beat, cruelly treated, tormented, starved, overworked, or otherwise abused ten (10) animals *** to wit: kept the animals caged or chained in filthy conditions and without access to food or water" and had previously been convicted of the same offense. *Id.* § 3.01. The State subsequently amended the latter count by striking allegations that he "beat" and "starved" the dogs.

¶ 4    At trial, Officer Joseph Chausse, the State's sole witness, testified that he was assigned to the animal crimes team and received special training on dogs. His training included instruction on their living environment, crimes and cruelty against them, and devices they were subjected to. For example, heavy chains with springs were used on dogs being trained for dog fighting. He also learned about treadmills used to facilitate dog fighting. Furthermore, he learned to rate the weight and size of a dog on a scale from one to five.

¶ 5    On June 4, 2015, Officer Chausse's team executed a search warrant at defendant's house (9741 South Avenue L). Only defendant's 10 dogs were home. In the basement, Officer Chausse observed "different sections of the basement that were cordoned off by wood paneling." These sections contained dogs tethered to thick, heavy chains. Officer Chausse acknowledged, however, that he did not actually touch, measure, or weigh those chains. Furthermore, he did not see any dogs with neck injuries from wearing too heavy of a chain. Springs were also located.

¶ 6    Four dogs were contained inside the cordoned off sections, standing on newspaper that was saturated with urine and feces. Officer Chausse testified that he saw a few piles of feces but did not know precisely how many piles. Additionally, three smaller dogs were in carrying cages lined with hay. One cage holding two puppies contained many pieces of feces. Officer Chausse acknowledged that he did not see any dogs with feces on their bodies or any emaciated or dehydrated dogs and that one photograph depicted food and water. Moreover, Officer Chausse found a breeding harness, used by tethering both dogs to the harness until they mate, as well as a commercial-grade treadmill and a homemade treadmill. In the yard, other dogs were inside 10-foot by 4-foot cages that had roofs with openings. The cages lacked a solid floor so that bodily waste would go right through the cage to the ground. According to Officer

Chausse, "it was kind of hard for them to walk around" without a flat surface. Photographs of the dogs housed outdoors were also admitted into evidence.

¶ 7 Chicago Animal Care and Control took all the dogs into custody for physical and psychological evaluations. No evidence was presented as to the results. In addition, Officer Chausse acknowledged that he did not apply the aforementioned scale to the dogs that day and saw no evidence that any dog was overworked. When asked on cross-examination whether he had seen any evidence that defendant "tormented" these animals, Officer Chausse responded affirmatively, citing the heavy chains, the urine-saturated paper, and the numerous pieces of feces. All photographs of the scene were admitted into evidence.

¶ 8 Officer Chausse further testified that at about 3:40 a.m. on June 8, 2015, he went to the police station and met defendant, who said he owned all the pit bulls found at his home. He purchased one dog and obtained the others from a known dog fighter. In addition, defendant explained that he built the cages in the basement to separate the dogs so they would not tackle each other and that the chains constricted the dogs within the makeshift cages. Defendant also explained that he purchased one treadmill, made the other one himself, and exercised each dog for 20 minutes per day. He used the harness to breed his dogs. Furthermore, defendant acknowledged that one dog had a scar on its muzzle from fighting with the other dogs, while another dog had a scar on its neck because a veterinarian removed its vocal cords.

¶ 9 The trial court denied defendant's motion for a directed finding, and the defense rested without presenting any evidence.

¶ 10 The trial court found Officer Chausse testified clearly and credibly as to his experience, observations, and discussion with defendant. Although the court appreciated defense counsel's argument that there was no evidence of psychological or physical injury to the dogs, the court found that "this is not humane care and treatment. This is abuse." In reaching this conclusion, the court noted the quantity of dogs, the lack of cage floors, the chains, the makeshift cages, the treadmills, and the harness. The court stated, "I see the chains whatever weight they are." Moreover, the court stated, "This is not how you treat dogs, put them in a basement with a bunch of newspapers and nothing else and where they, you know, have to go to the bathroom on this and then they're just chained in those certain areas, with the types of chains and the type of cages." The trial court subsequently denied defendant's motion for a new trial and sentenced him to concurrent year-long prison terms.

¶ 11 II. Analysis

¶ 12 A. Sufficiency of the Evidence

¶ 13 On appeal, defendant first asserts the evidence was insufficient to sustain his convictions because the evidence largely showed that he was a considerate dog owner with healthy dogs.

¶ 14 When reviewing the sufficiency of the evidence, we determine whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *People v. Mehta*, 2020 IL App (3d) 180020, ¶ 14. We must allow all reasonable inferences from the record in favor of the prosecution. *Id.* The testimony of a single, credible witness is sufficient to sustain a conviction. *People v. Smith*, 185 Ill. 2d 532, 541 (1999). Furthermore, the trier of fact is not required to disregard inferences that flow from the evidence. *People v. Lee*, 2015 IL App (1st) 132059, ¶ 50.

¶ 15    Section 3(a)(4) of the Act states that "[e]ach owner shall provide for each of his or her animals *** humane care and treatment." 510 ILCS 70/3(a)(4) (West 2014). While section 3 does not define "humane care and treatment," courts use common sense in determining whether an animal was deprived of this entitlement. *People v. Kirkpatrick*, 2020 IL App (5th) 160422, ¶ 47. Additionally, evidence that an animal's owner failed to consider the animal's health and well-being as a person of ordinary intelligence would have done is sufficient to establish that the animal was deprived of humane treatment and care. *Id.* ¶ 50. Furthermore, section 3.01(a) of the Act states that "[n]o person or owner may beat, cruelly treat, torment, starve, overwork or otherwise abuse any animal." 510 ILCS 70/3.01(a) (West 2014).

¶ 16    Here, the evidence shows that defendant failed to provide his dogs with humane care and treatment. Specifically, the dogs that defendant housed outside lacked appropriate cage floors. Contrary to defendant's suggestion, the photographs of the dogs resting their paws on the slim wooden beams supporting the cages do not rebut Officer Chausse's testimony that it was difficult for the dogs to walk solely on the metal wire. In the basement, some of the dogs were in makeshift cages.

¶ 17    Furthermore, defendant allowed the dogs' bodily waste to accumulate. On appeal, defendant argues, "[l]ife teaches that, when dogs drink water and eat food, they will eventually expel the same in the form of urine and feces." Yet defendant appears to have missed the lesson that dog owners must take measures to properly dispose of their dogs' waste because the dogs cannot do it for themselves. While Officer Chausse's team may not have made a point of photographing every misplaced piece of feces Officer Chausse saw, the trial court was nonetheless entitled to find his testimony regarding the dogs' bodily waste was credible. The photographs also show that conditions were filthy.

¶ 18    Defendant's omissions in care and treatment did not reflect compassion or consideration for the dogs in supervising their well-being. Additionally, the absence of evidence showing that the dogs appeared overworked, emaciated, or dehydrated does not ameliorate other inhumane conditions. When viewing the evidence in the light most favorable to the prosecution, we find the evidence was sufficient to sustain defendant's conviction for violating section 3 of the Act.

¶ 19    The evidence was also sufficient to show that defendant cruelly treated, tormented, or abused his dogs, as set forth in section 3.01 of the Act. The photographs support the trial court's inference that the chains were heavy, notwithstanding that Officer Chausse did not weigh the chains. Additionally, the presence of treadmills and defendant's statement that he exercised the dogs for 20 minutes per day indicated that he forced physical activity upon the dogs indoors, rather than giving them natural exercise outdoors. Furthermore, Officer Chausse testified that heavy chains and treadmills are used to facilitate dog fighting, while defendant testified that he obtained the dogs from a known dog fighter. The trial court was entitled to consider such testimony, not to mention the presence of a breeding harness, in determining whether defendant's treatment of the dogs reflected something other than mere companionship. Moreover, the court was entitled to find it was abusive to require the dogs to wallow in their own bodily waste.

¶ 20    Defendant nonetheless argues that the State failed to prove that the dogs suffered from any physical or psychological problems, precluding a finding of guilt. Yet the plain language of section 3.01 does not require that the dogs have demonstrable physical or psychological injury. See *People v. Collier*, 2020 IL App (1st) 162519, ¶¶ 11, 13, 20 (finding evidence was sufficient

to sustain the defendant's conviction under section 3.01(a) despite his assertion that his dogs were generally in good health). Neither does the language of section 3(a)(4). See also *Kirkpatrick*, 2020 IL App (5th) 160422, ¶ 51 (rejecting the defendant's suggestion that the State failed to prove her dogs were in imminent danger or that she would not have corrected conditions if given an opportunity, as neither proposition was an element of section 3(a)(4)). We further find the legislature did not intend to permit cruel treatment so long as it does not leave a physical or psychological mark.

¶ 21                                    B. Vagueness

¶ 22        Next, defendant contends that section 3(a)(4) of the Act is unconstitutionally vague because it fails to define "humane care or treatment." While defendant's opening brief failed to specify whether he is raising a facial or as-applied challenge to the statute, his reply brief clarifies his position that the statute is facially invalid. We review the constitutionality of a statute *de novo*. *People v. Curtis*, 407 Ill. App. 3d 1042, 1047 (2011).

¶ 23        A vagueness challenge implicates due process in that statutes must give persons of common intelligence fair notice of what the law demands of them. *In re T.B.*, 2020 IL App (1st) 191041, ¶ 88 (citing *United States v. Davis*, 588 U.S. ___, ___, 139 S. Ct. 2319, 2325 (2019)). In addition, a criminal law may be unconstitutionally vague where either (1) the statute fails to provide the manner of notice that would enable a person of ordinary intelligence to comprehend what is prohibited or (2) the statute fails to provide explicit standards for the individuals who apply it, thereby authorizing or encouraging arbitrary and discriminatory enforcement of the statute. *People v. Law*, 202 Ill. 2d 578, 582-83 (2002). Yet, precise guidance and perfect clarity are not required. See *Curtis*, 407 Ill. App. 3d at 1048. A statute is not rendered vague due to the potential for occasional difficulty in determining whether the government has proven the incriminating fact; instead, a statute is vague due to the indeterminacy in identifying what incriminating fact the statute requires. *People v. Plank*, 2018 IL 122202, ¶ 23. Similarly, an act is not unconstitutionally vague merely because a defendant can produce a hypothetical that brings the meaning of certain terms in doubt. *People v. Diestelhorst*, 344 Ill. App. 3d 1172, 1187 (2003). We generally examine vagueness challenges, including facial vagueness challenges, in light of the particular circumstances of the case at hand. *People v. Einoder*, 209 Ill. 2d 443, 451 (2004); *cf. Johnson v. United States*, 576 U.S. ___, ___, 135 S. Ct. 2551, 2555, 2557-58, 2561 (2015) (finding that, regardless of whether the statute was vague in all applications, it was unconstitutionally vague where it required courts to consider how a crime is ordinarily committed, rather than the specific facts of the crime or the elements of the crime); see also *United States v. Cook*, 970 F.3d 866, 877 (7th Cir. 2020) (finding "*Johnson* did not alter the general rule that a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge").

¶ 24        Moreover, a statute is presumed to be constitutional, and the challenging party has the burden of demonstrating that the statute is invalid. *Curtis*, 407 Ill. App. 3d at 1047. Reviewing courts must construe the statute to uphold its constitutionality if reasonably possible and must resolve any doubt in favor of the statute's validity. *People v. Falbe*, 189 Ill. 2d, 635, 639 (2000). Additionally, courts must ascertain and effectuate the legislature's intent, which is best indicated by the plain and ordinary meaning of the statute's language. *People v. Witherspoon*, 2019 IL 123092, ¶ 21. Courts may also consult contemporary dictionaries to ascertain an

undefined statutory term's ordinary and popularly understood meaning. *Id.* Common sense cannot be suspended. *Curtis*, 407 Ill. App. 3d at 1048.

¶ 25    We find defendant cannot demonstrate that section 3(a)(4) fails to sufficiently enable a person of ordinary intelligence to understand what conduct the statute criminalizes or that it fails to provide police officers and the courts explicit standards. As stated, section 3(a)(4) requires that "[e]ach owner shall provide for each of his or her animals *** humane care and treatment." 510 ILCS 70/3(a)(4) (West 2014). Additionally, "Humane" conduct is " 'marked by compassion, sympathy, or consideration for humans or animals.' " *Curtis*, 407 Ill. App. 3d at 1049 (quoting Merriam-Webster Online Dictionary, http://www.merriam-webster.com/ dictionary/humane (last visited Jan. 14, 2021) [https://perma.cc/6JGQ-8N6V]). We also observe that Merriam Webster's Dictionary defines "care," in the sense of "charge" or "supervision," as "responsibility for or attention to health, well-being, and safety" "under a doctor's care." (Emphasis omitted.) Merriam-Webster Online Dictionary, http://www. merriam-webster.com/dictionary/care (last visited Jan. 14, 2021) [https://perma.cc/D99X-R7YT]. That dictionary also defines "treatment," in pertinent part, as "the act or manner or an instance of treating someone or something: such as *** conduct or behavior towards another." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/treatment (last visited Jan. 14, 2021) [https://perma.cc/JJG8-XAK9]. Given the readily understandable meaning of these terms, section 3(a)(4) does not suffer from indeterminacy in identifying what incriminating fact the statute contemplates. See *Plank*, 2018 IL 122202, ¶ 23.

¶ 26    We find a person of ordinary intelligence would understand that defendant failed to provide humane care and treatment for his dogs in this instance. Briefly stated, in taking responsibility for the dogs and conducting himself toward them, defendant did not demonstrate compassion, sympathy, or consideration for the dogs when he failed to provide an adequate habitat or ensure that bodily waste did not accumulate. *Cf. Law*, 202 Ill. 2d at 583-85 (finding the statute criminalizing the act of permitting an intoxicated minor to leave the actor's residence was vague where it potentially required the actor to commit the offense of unlawful restraint, did not otherwise specify how to prevent the minor from leaving, and created a dilemma in choosing which offense to commit). This scenario falls within the "heartland" of the statute. See *Salman v. United States*, 580 U.S. ___, ___, 137 S. Ct. 420, 428-29 (2016) (finding that neither the statute nor caselaw applying it left "grave uncertainty" or "hopeless indeterminacy" per *Johnson*, that the defendant's conduct fell within "the heartland" of the rule, and, thus, it was unnecessary to consider more difficult scenarios (internal quotation marks omitted)). In the absence of any uncertainty, those applying the law would not be encouraged to enforce it in an arbitrary or discriminatory manner. Furthermore, this court has already found that the "humane care and treatment" language provides sufficient standards for officers and triers of fact to engage in unbiased application of the statute. *Curtis*, 407 Ill. App. 3d at 1049. Defendant has not otherwise shown that the application of the statute lends itself to moment-to-moment judgment. See *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999).

¶ 27    Here, defendant's conduct fell squarely within the statute. Accordingly, we need not consider the hypothetical scenarios in which he believes applying the statute would be less clear.

## III. Conclusion

The evidence was sufficient to sustain the trial court's determination that defendant failed to provide his dogs with humane care and treatment and that he cruelly treated, tormented, or abused them. Additionally, defendant cannot demonstrate that section 3(a)(4) of the Act is unconstitutionally vague.

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.